**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| Charles Eppolito, Jr. and Elaine A. Eppolito, | : | |
| Debtors. | : | Bankruptcy No. 12-12083-mdc |

# **MEMORANDUM**

BY: MAGDELINE D. COLEMAN, CHIEF U.S. BANKRUPTCY JUDGE

## I. INTRODUCTION

Before the Court for consideration is the *Acting United States Trustee's Motion to Reopen Case* (the "Motion to Reopen"),[1] in which the Acting United States Trustee (the "U.S. Trustee") requests that the Court reopen the bankruptcy case of joint debtors Charles Eppolito, Jr. ("Mr. Eppolito") and Elaine A. Eppolito (together with Mr. Eppolito, the "Debtors") pursuant to 11 U.S.C. §350(b). The U.S. Trustee seeks to reopen the case to allow for the appointment of a Chapter 7 trustee to conduct an inquiry as to whether funds in the approximate amount of $300,000.00 (the "Settlement Funds") received by Mr. Eppolito in settlement of a personal injury action constitute property of the Debtors' bankruptcy estate to be administered for the benefit of the Debtors' creditors. The Debtors oppose the Motion to Reopen asserting that the Settlement Funds are not property of their bankruptcy estate. Rather, the Settlement Funds represent the proceeds from a post-petition injury suffered by Mr. Eppolito.

Following a hearing on the Motion to Reopen and consideration of the parties' pleadings and arguments, the Court will grant the Motion to Reopen for the reasons set forth below.

---

[1] Bankr. Docket No. 23.

## II. PROCEDURAL BACKGROUND

On March 5, 2012 (the "Petition Date"), the Debtors filed a voluntary petition under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§101, *et seq.* (the "Bankruptcy Code").[2] One day later, Lynn E. Feldman was appointed as the chapter 7 trustee of the Debtors' bankruptcy case (the "Chapter 7 Trustee"). The Chapter 7 Trustee subsequently filed a Report of No Distribution advising that there was no property available for distribution from the estate over and above that exempted by law.[3] On July 2, 2012, the Court entered Orders discharging both Debtors and closing their bankruptcy case.[4]

Over seven years later, on December 6, 2019, the U.S. Trustee filed the Motion to Reopen. The Debtors responded by asserting, in the *Debtors' Answer to Acting U.S. Trustee Motion to Reopen* (the "Response"),[5] that the cause of action which resulted in the Settlement Proceeds did not arise until Mr. Eppolito was injured post-petition, and therefore the Settlement Proceeds are not property of the Chapter 7 bankruptcy estate. In support of their position, on March 17, 2020, the Debtors filed the *Affidavit of Charles Eppolito, Jr. in Lieu of Live Direct Testimony in Opposition to the U.S. Trustee Motion to Reopen* (the "Eppolito Affidavit").[6] On March 31, 2020, the U.S. Trustee filed the *United States Trustee's Supplement to the Motion to Reopen Case* (the "U.S. Trustee Supplemental Brief"),[7] and the Debtors filed the *Debtors [sic] Supplemental Answer to Acting U.S. Trustee Motion to Reopen* (the "Debtors' Supplemental Brief," and together with the U.S. Trustee Supplement, the "Supplemental Briefs"). On April 1, 2020, the

---

[2] Bankr. Docket No. 1.
[3] Bankr. Docket No. 16.
[4] Bankr. Docket Nos. 19, 20.
[5] Bankr. Docket No. 26.
[6] Bankr. Docket No. 39.
[7] Bankr. Docket No. 40.

Court held the Hearing on the Motion to Reopen, at which counsel for both parties presented their arguments.

### III.    DISCUSSION

#### A.    The Legal Standard for Reopening a Case Under §350(b)

Section 350 of the Bankruptcy Code governs this Court's authority to grant the relief sought by the Motion to Reopen. 11 U.S.C. §350. In relevant part, §350(b) provides that a debtor's bankruptcy case may be reopened "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. §350(b). The party seeking to reopen the case must establish the existence of one of these three reasons, and only then this Court may, within its discretion, reopen the bankruptcy case. *In re Bellano*, 456 B.R. 220, 221 (Bankr. E.D. Pa. 2011) (recognizing that a party seeking §350(b) relief has the burden of proof). In the exercise of its discretion, a bankruptcy court considers a variety of factors that include: (1) the length of time the case has been closed; (2) whether the party may obtain relief in an alternative forum; (3) whether any party would be prejudiced by the reopening of the bankruptcy case; (4) any benefit that may accrue to the debtor as a result of reopening; and (5) whether, if the case was reopened, the party is entitled to any relief. *See, e.g., In re Antonious*, 373 B.R. 400, 405 (Bankr. E.D. Pa. 2007). The U.S. Trustee has the burden of demonstrating a compelling cause to reopen the case and is required to show that, assuming the case is reopened, this Court can afford the relief sought by the U.S. Trustee. *See, e.g., Redmond v. Fifth Third Bank*, 624 F.3d 793, 803 (7th Cir. 2010); *In re Smith*, 2015 WL 3455356 (Bankr. N.D. Ohio May 28, 2015).

#### B.    The Parties' Arguments Regarding the Settlement Proceeds

As noted above, the U.S. Trustee asks the Court to reopen the Debtors' bankruptcy case so that a trustee may be appointed to determine whether the Settlement Proceeds constitute property

3

of the Debtors' chapter 7 bankruptcy estate. In their Response, the Debtors assert that the Settlement Proceeds "are the result of an injury sustained by [Mr. Eppolito] on April 20, 2012, diagnosed as an implant device failure on April 25, 2012, and revision surgery on July 20, 2012, all acts that occurred post-petition." Response at ¶4. As these dates are after the Petition Date, the Debtors assert that the Settlement Proceeds are not property of the estate. Response at ¶5.

The Debtors submitted the Eppolito Affidavit in support of their argument that the Settlement Proceeds are not estate property. Mr. Eppolito states that he underwent surgery in December of 2005 to receive an implant device in his left hip. Eppolito Affidavit at ¶1. Mr. Eppolito further states that in November of 2011, he began to have difficulty with his right knee and pain in his buttocks. Eppolito Affidavit at ¶3. According to Mr. Eppolito, he did not have any issues with his left hip at any time prior to the filing of his bankruptcy petition on March 5, 2012, or the meeting of the Debtors' creditors pursuant to §341 of the Bankruptcy Code held on April 18, 2012. Eppolito Affidavit at ¶¶3-5. Rather, Mr. Eppolito represents that his first indication of a problem with his left hip came on April 20, 2012, roughly a month-and-a-half after the Debtors' bankruptcy filing, and surgery in July 2012 "revealed that the implant appeared to have failed and the same was removed." Eppolito Affidavit at ¶¶7-8. Mr. Eppolito subsequently initiated litigation against the manufacturer of the implant in New Jersey state court in July 2014 (the "New Jersey Action"). Eppolito Affidavit at ¶10. According to Mr. Eppolito, he was not given the opportunity to review and approve the Complaint in the New Jersey Action prior to its filing and did not receive a copy of it until sometime in or about 2015. *Id.*

Notwithstanding Mr. Eppolito's timeline of events in the Eppolito Affidavit, the U.S. Trustee points to Mr. Eppolito's averments in the Complaint in the New Jersey Action. The U.S.

4

Trustee Supplemental Brief attached the Complaint in the New Jersey Action. See U.S. Trustee Supplemental Brief at Exhibit 2. The Complaint alleges, *inter alia,* that:

> 6. Defendant's Defective Device was placed into the stream of interstate commerce and was implanted in Plaintiff Charles Eppolito, Jr., on December 20, 2005.
>
> * * *
>
> 13. After the implantation of the Defective Device, Plaintiff Charles Eppolito, Jr. began experiencing discomfort in the area of his Defective Device.
>
> 14. Based upon diagnostic workup and in light of Plaintiff's worsening symptoms, he was taken back for revision surgery on July 20, 2012. During that surgery, it was discovered that, in fact, there was presence of gross heavy metal toxicity or metallosis, severe damage to the trunnion, and disengagement of the femoral head from the trunnion.

Complaint at ¶¶6, 13-14. The U.S. Trustee argues that these allegations in the Complaint "clearly set[] forth that the debtor's cause of action arose in December 2005, when the defective device was implanted into the debtor." *Id.* at ¶11.

In response, the Debtors argue that nothing in the Complaint in the New Jersey Action establishes that the Debtor's cause of action arose in 2005. Debtors' Supplemental Brief at ¶11. Rather, "the Complaint merely notes that the device was implanted in 2005 and that Defendant is liable by virtue of it being its product." *Id.*

    C.    **Reopening the Debtors' Case to Appoint a Trustee is Warranted**

The heart of the Debtors' argument is that because Mr. Eppolito experienced acute pain in his left hip post-petition and ultimately discovered that the device failed post-petition, his cause of action did not arise until after the Petition Date, and thus the Settlement Proceeds are not estate property. The Debtors rely on Pennsylvania law to take the position that Mr. Eppolito's cause of action for the implant did not accrue until he first could have maintained an action to a successful conclusion. Debtors' Supplemental Brief at ¶22. In doing so the Debtors

5

cite an order this Court previously entered in *In re Francis*, Case No. 10-14207, Docket No. 29 (April 25, 2017).

In *Francis*, the Court was faced with a similar motion by the U.S. Trustee to reopen a closed chapter 7 case to allow a Chapter 7 trustee to administer a personal injury cause of action held by the debtor in that case related to a medical procedure. The U.S. Trustee alleged that the claim arose prior to the bankruptcy filing and therefore any monies derived therefrom were property of the estate. This Court held that, based on Pennsylvania law, the debtor's injury accrued at the time she discovered or should have discovered her injury, and the U.S. Trustee had submitted no evidence as to when that date was. By contrast, the debtor had submitted evidence indicating that the debtor only began experiencing pain related to her medical procedure after her bankruptcy discharge. The Court also found relevant the fact that the medical community only became aware of the risks of the debtor's procedure after the debtor received her discharge. The Court concluded that there was no evidence, other than the date of the initial procedure, which would indicate the debtor's claim arose prior to her bankruptcy discharge.

The Debtors argue that the Court's reasoning in *Francis* is exactly on point in this case. Debtors' Supplemental Brief at ¶22. The Court is persuaded, however, that resolution of the Motion to Reopen is not governed by the analysis in *Francis*.

First, unlike in *Francis*, here the Court has been presented with some evidence that Mr. Eppolito's cause of action related to the hip implant arose prior to the Petition Date. It is undisputed that the defective device was implanted in Mr. Eppolito in 2005, years before the Petition Date. The medical records attached to the Eppolito Affidavit, however, also at least

6

raise the question whether the defect manifested itself prior to the Petition Date.[8] Notes from the surgeon who implanted the device in Mr. Eppolito dated November 28, 2011, note not only that Mr. Eppolito was having issues with his right hip and right knee, but also that his left knee was bothering him as well. The Court is not qualified to determine whether such pain in the left knee would have sufficiently indicated issues with the left hip and implanted device to warrant further investigation, but the Court believes this constitutes evidence that Mr. Eppolito's cause of action related to the device may have arisen prior to the Petition Date.

Furthermore, the Debtors' inconsistent statements regarding when Mr. Eppolito's injury occurred lead the Court to conclude that there is sufficient evidence to warrant further inquiry into what Mr. Eppolito was experiencing and when. In the Response to the Motion to Reopen, the Debtors stated that the Settlement Proceeds are "the result of an injury sustained by Debtor on April 20, 2012." Response at ¶4. According to the Eppolito Affidavit, that is the date Mr. Eppolito's left hip "suddenly felt extremely strange as if something was loose or falling within the left hip area." Eppolito Affidavit at ¶6. In the Complaint in the New Jersey Action, however, Mr. Eppolito averred that the defective device was implanted on December 20, 2005, and "after implantation of the Defective Device, Plaintiff Charles Eppolito, Jr. began experiencing discomfort in the area of the Defective Device." Trustee's Supplemental Brief at Exhibit 2, ¶¶6, 12. Although Mr. Eppolito represents that he did not review the Complaint in the New Jersey Action prior to it being filed, and assumedly argues by implication that its

---

[8] With the U.S. Trustee's agreement, the Debtors were permitted to submit the Eppolito Affidavit in lieu of Mr. Eppolito appearing for live testimony. Bankr. Docket No. 37. At the Hearing, the U.S. Trustee objected to the use of the medical records attached to the Eppolito Affidavit on the grounds that they are unauthenticated hearsay. While the Court does not believe those objections are without merit, in the context of and solely for the purpose of resolving the Motion to Reopen, the Court will treat the medical records as falling under the residual exception to hearsay set forth in Federal Rule of Evidence 807 because they (1) have equivalent circumstantial guarantees of trustworthiness, (2) are offered as evidence of a material fact, *i.e.,* when Mr. Eppolito began experiencing issues with the defective device, (3) is more probative on that point than other evidence the Debtors could otherwise obtain; and (4) admitting them will best serve the purposes of the rules of evidence and the interests of justice.

7

allegations were imprecise with respect to the timeline of his injury, the Court believes the averments therein raise enough question regarding that timeline to merit further inquiry.

Finally, upon review of the Court's reasoning in *Francis*, the Court believes that it too narrowly interpreted whether a cause of action is property of the estate where the relevant events may straddle the date the bankruptcy petition was filed. In *Francis*, the Court looked to when the personal injury action accrued under applicable Pennsylvania state law. This was consistent with the approach some other courts have taken. *See, e.g., French v. Marion Gen. Hosp. (In re Patterson)*, 2008 Bankr. LEXIS 1778 (Bankr. N.D. Ohio June 3, 2008) (noting that some courts have evaluated whether a cause of action is property of the estate by looking to the accrual date under applicable state law). However, other courts have declined to treat the accrual date under state law as dispositive of whether a cause of action is estate property. *Id.* (when the operative events for a cause of action straddle the petition date, the claim may be found to be estate property notwithstanding that it formally arises postpetition). These courts have instead looked to the standard enumerated in *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). That standard looks to whether the events giving rise to the claim are sufficiently rooted in the pre-bankruptcy past; if so, the cause of action is property of the estate. *Id.* at 380. At least here, where the defective device was implanted prior to the Petition Date and other evidence suggests that the defect may have manifested prior to the Petition Date, the Court believes that *Segal* and its progeny warrant further inquiry into whether Mr. Eppolito's cause of action, and therefore the Settlement Proceeds, are sufficiently rooted in Mr. Eppolito's pre-bankruptcy past such that they constitute property of the estate.[9]

---

[9] The Court is careful to caution that its finding that further inquiry by a chapter 7 trustee is warranted does not equate to a determination that the Settlement Funds are in fact property of the estate.

8

## IV. CONCLUSION

The Court will exercise its discretion under §350(b) to reopen the Debtors' Chapter 7 bankruptcy case and direct the U.S. Trustee to appoint a chapter 7 trustee for the purpose of conducting an inquiry as to whether the Settlement Proceeds constitute property of the Debtors' bankruptcy estate.

Dated: May 19, 2020

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Matthew R. Nahrgang, Esquire
35 Evansburg Road
Collegeville, PA 19426

Alexander G. Tuttle, Esquire
Tuttle Legal
2303 N. Broad Street, Suite 2
Colmar, PA 18915

Lynn E. Feldman, Esquire
Feldman Law Office PC
221 N. Cedar Crest Boulevard
Allentown, PA 18104

Kevin P. Callahan, Esquire
United States Trustee
Custom House
200 Chestnut Street, Suite 502
Philadelphia, PA 19106-2912